UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL R. SANCHEZ,

                Plaintiff,

                                    **Hon. Hugh B. Scott**

         v.                                12CV258A

                                    **Report**
                                    **and**
MICHAEL J. ASTRUE, Commissioner of      **Recommendation**
Social Security,

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 5 (defendant), 7 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "defendant") that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Michael R. Sanchez ("Sanchez" or "plaintiff"), filed an application for disability insurance benefits on June 12, 2007. That application was denied initially and on reconsideration. The plaintiff appeared before Administrative Law Judge ("ALJ") Nancy Gregg Pasiecznik, who considered the case de novo and concluded, in a written decision dated May 27, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The

ALJ's decision became the final decision of the Commissioner on February 3, 2012, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on March 30, 2012 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 5, 7), defendant Commissioner (Docket No. 12) and plaintiff replied (Docket No. 13). The motions were deemed submitted on October 23, 2012 (see Docket No. 11).

## FACTUAL BACKGROUND[1]

Plaintiff was born on May 26, 1961, and was 45 years old at the alleged onset date (of August 1, 2006). Plaintiff's education was "limited" (R. 39), having an eleventh grade education (R. 53-54), and he worked as a small products assembler (as late as 2001, R. 142; see Docket No. 7, Pl. Memo. at 19), as well as a maintenance worker, delivery driver (R. 158, 53-57).

He claims disability due to a back injury in August 2006, claiming impairments of disc degeneration, degenerative disc disease, and carpel tunnel syndrome. He has not engaged in substantial gainful activity since August 1, 2006. (R. 32.)

## MEDICAL AND VOCATIONAL EVIDENCE

Treating physician Dr. P. Jeffrey Lewis, on September 6, 2006, noted plaintiff had a pulling injury on August 9, 2006, sustained while performing maintenance work at Baker Victory Services (R. 250, 35). Plaintiff had lower back pain radiating to the buttocks that was not eased by chiropractic care (R. 250). On examination, there was a mild restricted range of motion of the lumbar spine on flexion and extension (id.). Dr. Lewis opined that plaintiff had a lumbar disc

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

herniation or annular tear and ordered an MRI scan and kept plaintiff on total disability from work (id.).

The independent chiropractic examiner, Dr. Louis Marconi, D.C., examined plaintiff on November 1, 2006, and found that plaintiff had a lifting restriction of ten pounds, could sit and stand throughout the day as needed, but should not engage in continual bending, stooping or twisting (R. 36, 280). On March 7, 2007, Dr. Marconi opined that plaintiff was not able to return to work even if performing light duty (R. 36, 277), but the ALJ gave this opinion less weight because it came from a chiropractor which is not deemed to be a "medical" source under SSR 06-03p (R. 36).

On April 23, 2007, Dr. Patrick Hughes, conducted an independent medical examination for plaintiff's worker's compensation claim. Dr. Hughes found that plaintiff exhibited signs of symptom magnification characterized by the fact that plaintiff's axial loading test was positive and the finding of hypalgesia[2] involving the entire left leg did not make sense from a neurological viewpoint (R. 36, 274). On June 14, 2007, Dr. Anthony Leone examined plaintiff for a further evaluation of his back pain for compensation purposes, reviewing the reports of Drs. Marconi and Hughes and plaintiff's MRI and CT scans (R. 36). After examining plaintiff, Dr. Leone found that plaintiff had a partial disability and "is certainly capable of doing some type of work, no bending, no twisting, no overhead activity, no lifting, pushing, pulling or carrying more than 20 lb. [sic]" (R. 36, 269). Dr. Leone found intact (5/5) lower extremity strength, normal muscle bulk and tone, normal gait, and negative straight leg raising and nerve root tension signs, and plaintiff did not use walking aids (R. 36, 269).

---

[2] Lessening sensitivity to pain, Taber's Cyclopedic Medical Dictionary 857 (16 ed. 1989).

On October 17, 2007, he was examined by Dr. Samuel Balderman in a consultative orthopedic examination (R. 37). Plaintiff was using a cane self prescribed (R. 37, 306). Dr. Balderman found full strength (5/5) in plaintiff's lower extremities (R. 307). Dr. Balderman concludes that plaintiff has mild limitation in bending and lifting due to lumbar spine pain (R. 37, 308).

At his hearing, plaintiff testified that his symptoms include residual pain and some numbness and tingling from his lumbar surgeries, that he is still in recovery and has not experienced much improvement (R. 34). He claims that he can sit for only two minutes, stand for two to three minutes and walk for three minutes, that he cannot lift a gallon of milk or a bag of sugar but can lift a coffee cup (id.). He lies down during the day, up to six or seven times a day for an hour each time, relieving some of his pain (id.). Plaintiff admitted that smoking a half a pack of cigarettes a day has inhibited the spinal fusion process (id.), despite being told by his doctor of the inhibiting effect of smoking on fusing (R. 38). He takes Lortab that help for 30 minutes but he becomes groggy (R. 34). Plaintiff listed as his daily activities taking medication, watching television, and sleeping, with relatives helping with chores and shopping and making his meals (R. 34-35).

The ALJ found that plaintiff had severe degenerative disc disease, but not sufficient to prevent ambulation as required by Sec. 1.00B2b(1). The ALJ concluded that plaintiff did not have an impairment or combination of impairments that meet or equal the listed impairments in the Social Security regulations (R. 32), although the plaintiff has evidence of spinal disorders, the ALJ found that "they have not resulted in the 'inability to ambulate effectively' as that term is used and defined in the musculoskeletar listings" (R. 33), see 20 C.F.R. Part 404, Subpart P,

4

Appx. 1, Listing 1.04, Sec. 1.00B2b(1) (R. 33 n.5). The ALJ also found that plaintiff's carpel tunnel was not sufficiently severe to be debilitating. The ALJ found that plaintiff was capable of performing his past relevant work and that he was actually performing it (R. 38-39). She made this finding although the vocational expert opined that, if a hypothetical worker like plaintiff were restricted to lifting and carrying no more than ten pounds, this worker could not perform any past relevant work (R. 39). While plaintiff's medically determinable impairments could reasonably be expected to cause some degree of the symptoms claimed, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible but not to the extent of establishing totally disabling limitations" (R. 38). The ALJ concluded that plaintiff has the residual functional capacity to perform less than a full range of light work, namely that he could work if limited in lifting, carrying, pushing and pulling no more than ten pounds occasionally and less than five pounds frequently, while avoiding extreme cold temperatures, dampness, and rainy weather, concluding that there were other jobs in the economy that plaintiff (thus limited) could perform, such as a final assembler, surveillance system monitor, order clerk, and dowel inspector (R. 33, 40-41).

The ALJ gave the greatest weight to the medical opinions of Drs. Hughes and Leone, who found that plaintiff could perform some light work with limitations (R. 38), but did not rely upon the opinion of Dr. Balderman because plaintiff gave submaximal efforts during his examination (R. 38, 308). The ALJ points to inconsistencies in plaintiff's stated level of education and the doctors' claims of plaintiff's symptom magnification in the credibility determination (R. 38).

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which

the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>    (1) whether the plaintiff is currently working;
>
>    (2) whether the plaintiff suffers from a severe impairment;
>
>    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>    (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
>    (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

*Application*

In the instant case, plaintiff contends that there was lacking substantial evidence for the ALJ's residual functional capacity determination. Plaintiff rejects the ALJ's credibility determination as also not being supported by substantial evidence. He argues that the ALJ erred in finding that plaintiff was capable of returning to his past relevant work as a small parts assembler or could perform in similar jobs. He also contends that the ALJ's analysis at Step 5 was not supported by substantial evidence.

I.  Residual Functional Capacity Determination

Plaintiff faults the ALJ for not following the legal standard and for specifying the frequency of the need to alternate position between sitting and standing to conclude the plaintiff could perform light work (Docket No. 7, Pl. Memo. at 12). Alternate sitting and standing needs to be considered under Social Security guidelines if the claimant cannot perform either prolonged sitting or standing and walking (id.), SSR 83-12, at 3; Baron v. Astrue, No. 08CV3303, 2010 WL 563069 (E.D.N.Y. Feb. 17, 2010). He argues that the record needed to be developed regarding the duration of plaintiff sitting or standing (Docket No. 7, Pl. Memo. at 13). He cites cases in which the Commissioner's denial of disability were reversed because the scope and extent of the sit/stand option needed to be developed (id.), see Colvin v. Astrue, No. 09-CV-132, 2011 WL 4055324, at *6 (N.D.N.Y. June 10, 2011) (Bianchini, Mag. J., Report & Rec.), adopted, 2011 WL 4055313 (N.D.N.Y. Sept. 12, 2011); see also Kouadio v. Astrue, No. 08CV811, 2010 WL 4922672, at *5-6 (W.D.N.Y. Dec. 2, 2010) (Arcara, J.).

Defendant responds that a discretionary sit/stand option is permissible and has been upheld in other cases (Docket No. 12, Def. Reply Memo. at 2); see Scrufari v. Astrue,

8

No. 11CV161, Docket No. 9, Report & Rec. at 19-20, 2012 WL 912925, at *10 (W.D.N.Y. Feb. 28, 2012) (Foschio, Mag. J.), adopted, Docket No. 10 (W.D.N.Y. Mar. 16, 2012) (Arcara, J.). Defendant also points out that plaintiff relies upon his self-interested testimony of the limited time he can sit or stand which the ALJ found not to be not credible (id.). The Commissioner also noted that plaintiff had no treatment note in his medical record indicating that he needed to sit, stand, or lie down during examinations (id.; see Docket No. 6, Def. Memo. at 21).

The cases cited by plaintiff remanded sit/stand determinations for further development of a record. In Kouadio, Judge Arcara found that the ALJ relied upon the conclusion of a treating physician that the claimant there was 50% disabled. Judge Arcara found that the medical record did not support the physician's conclusion. 2010 WL 4922672, at *5, and the ALJ was faulted for not developing the record on the sit/stand option, id. at *6. In Colvin, the court found that the ALJ did not adequately develop the record regarding the frequency of claimant's need to sit and stand, 2011 WL 4055324, at *6.

Next, plaintiff faults the ALJ for not obtaining a medical opinion from his treating physician, Dr. Lewis, about the necessity and duration plaintiff's sitting and standing (Docket No. 7, Pl. Memo. at 15-16). Plaintiff also contends that the disability analyst (K. Kriner) who completed the Physical Residual Functional Capacity form was not deemed to be a medical expert (id. at 16; see R. 314), although it was included as part of plaintiff's medical record (see R 46) considered by the ALJ. Defendant responds that the ALJ did develop the record here and re-contacting a medical source is required only if the evidence revealed to date was inadequate or if the evidence is inconsistent and the ALJ cannot decide whether plaintiff was disabled (Docket No. 12, Def. Response at 3).

9

On September 6, 2006, Dr. Lewis found that plaintiff had mild restricted range of motion of the lumbar spine without experiencing leg pain and lower extremity motor and sensory function and gait were normal (R. 250-51, 35). The ALJ had notes from Dr. Lewis after this (R. 343-58, 356-57, 400). By July 2009, Dr. Lewis found plaintiff to be totally disabled (R. 400). The ALJ considered Dr. Lewis' 2009 opinion in finding plaintiff was not disabled (R. 37), but the ALJ did not specifically consider how long plaintiff can sit or stand at any period. The ALJ **needs to reopen** the medical record here to get Dr. Lewis's opinion (and other medical evidence) on plaintiff's ability to sit and stand or on the duration of his sitting and standing.

II.     ALJ's Credibility Determination

As for the ALJ not giving plaintiff full credence, the ALJ relied upon the consultative physicians' findings that plaintiff engaged in symptom magnification. Plaintiff argues that the ALJ disregarded plaintiff stopping work after the second documented work-related injury that resulted in two surgeries (Docket No. 7, Pl. Memo. at 17). In assessing the intensity, persistence or limiting effects of plaintiff's symptoms, the ALJ had to assess the credibility of plaintiff's subjective complaints and consider such factors as his daily activities; type, dosage, effectiveness, and side effects of medication; measures taken to relieve symptoms; other factors, 20 C.F.R. § 404.1529(c)(3) (id. at 18). Plaintiff argues that the ALJ misstated his testimony, that plaintiff could sit for two minutes (R. 34), when he testified that he could sit for ten minutes (R. 68; Docket No. 7, Pl. Memo. at 18). Review of the transcript of the hearing indicates that plaintiff was heard to say that he could sit for two minutes, then the ALJ asked whether plaintiff said two or ten minutes, and plaintiff then replied that he could sit for **ten** minutes (R. 68).

10

Plaintiff does not perform household chores and has relatives assist him (R. 34-35). He is compelled to lie down for hours at a time and has to shift from sitting or standing due to the pain in remaining in any one position. The ALJ appears to have considered this testimony in finding that plaintiff had some impairment but not sufficient to be deemed disabling (see R. 38). But the ALJ's credibility findings rely upon the medical conclusions of symptom magnification. The Commissioner points out that plaintiff could care for himself, do his laundry, cook, clean, and drive and that plaintiff's statements to the contrary were contradicted (Docket No. 12, Def. Reply Memo. at 2; R. 266).

The Commissioner has the discretion to evaluate plaintiff's credibility in light of the evidence in the record, see Kendall v. Apfel, 15 F. Supp. 2d 262, 267 (E.D.N.Y. 1998); Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (it is the function of the Commissioner to resolve evidentiary conflicts and appraise credibility of witnesses) (Docket No. 6, Def. Memo. at 22). There is a medical record to substantiate the ALJ's finding as to magnification by plaintiff and to not credit plaintiff's complaints of pain intensity, persistence, and limitation.

III.     Plaintiff's Capability To Return to Past Relevant Work or Like Work

Next, plaintiff claims that the ALJ erred in finding that plaintiff could return to his past relevant work as a small parts assembler or to light work, arguing that this was not his past relevant work because he did not earn enough as a small parts assembler to be substantial gainful activity (Docket No. 7, Pl. Memo. at 19). As for his past relevant work, plaintiff last performed small parts assembly in 2001 when he did other work (id. at 19-20). Defendant argues that even if plaintiff did not earn enough in this work to constitute substantial gainful activity (cf. id. at 19)

the error is harmless since the ALJ proceeded to Step 5 of the disability analysis and found other occupations plaintiff could perform in his condition (Docket No. 12, Def. Reply Memo. at 4).

Plaintiff's argument here should be rejected as, at worst, harmless error. Since the ALJ continued to Step 5 of the analysis (as discussed below) and considered other occupations in the economy that plaintiff might be able to perform, the fact the ALJ listed an occupation in which plaintiff may not have been substantial gainfully employed, is of no moment.

IV.     Step 5 Analysis

Finally, plaintiff argues that the ALJ erred in his Step 5 analysis by, first, placing the burden of proving disability at this step upon plaintiff rather than upon the Commissioner (Docket No. 7, Pl. Memo. at 20; cf. R. 31). Second, plaintiff argues that the ALJ did not meet the burden of proof for the three jobs identified since the ALJ did not consider the frequency of the need to sit and stand for any of these jobs (id. at 21; R. 83-84). The ALJ also disregarded the opinion of the vocational expert that, given the medication plaintiff would have to take, plaintiff could not perform any of these alternative jobs (R. 84-85; Docket No. 7, Pl. Memo. at 21).

As for the burden of proof at Step 5, the ALJ noted that "although the claimant generally continues to have the burden of proving disability at this step, once the claimant has established that he cannot perform his past relevant work, a limited burden of going forward with the evidence shifts to the Social Security Administration to show that the claimant has the residual functional capacity to perform other work that exists in significant numbers in the national economy" (R. 31). Step 5 evaluates the plaintiff's age, work experience, and education to determine if there is some other work he can perform despite his infirmities (see Docket No. 6, Def. Memo. at 23). While the ALJ may have cited an incorrect standard, the ALJ's finding at

Step 5 here did not turn on whether plaintiff met his burden of proof. The ALJ here made the alternative finding under Step 5 (R. 39).

As for the side effects of pain medication plaintiff would have to take, plaintiff's attorney added to the hypotheticals posed to the vocational expert that plaintiff needed pain medication (R. 84). The vocational expert concluded that the side effects of that medication would be problematic for the identified jobs (R. 84-85). Plaintiff concludes that the expert's opinion relied upon by the ALJ (that jobs existed in the economy that plaintiff could perform) was not based upon his full condition and therefore the ALJ's finding needs to be vacated (Docket No. 7, Pl. Memo. at 21-22). Defendant Commissioner now argues that the ALJ need not pose a hypothetical most favorable to the claimant, only hypotheticals that are supported by substantial evidence are required (Docket No. 12, Def. Reply Memo. at 5), see Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). The ALJ noted that plaintiff was prescribed pain medication (R. 34, 35, 37), but disregarded in the hypothetical the factor of the use of the pain medication and its side effects. Dumas is distinguishable; there, the Second Circuit held that the vocational expert had substantial evidence to support the assumptions contained in the hypothetical used by the expert. The expert opined that the claimant there could perform sedentary work, and the claimant's challenge to the contrary was rejected. Id. Here, there is substantial evidence of plaintiff's use of prescribed medication but the hypotheticals posed by the ALJ do not factor in use of these medicines and the consequences of their side effects on the ability of plaintiff to work without significant restriction. If necessary, the ALJ should reopen this matter to consider the side effects of this medication on plaintiff's ability to work, including posing that question in a refined hypothetical.

13

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 5) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 7) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 14, 2013